United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Marcos is in Miami. And Judge John Bush from the 6th Circuit is visiting with us this week, although remotely. And Judge Bush is in Louisville, Kentucky. And Judge Bush has been with us all week. And Judge, we'd like to thank you for helping us decide these appeals this week. Thank you. Good to be with you. Hopefully next time we can welcome you in Miami or Tampa or one of our other locations. That would be great. Now, Mr. Maycock has advised me that counsel are present and they're ready to proceed. Counsel, I will advise you that the judges have not previously conferred about these appeals that are scheduled for argument this morning. But we've read the briefs and we've examined the relevant parts of the record. If that will assist you in confining your arguments to the issues on appeal. Ms. Tisa is our courtroom deputy and she will be the timekeeper. And she will let you know when you have two minutes left to argue. And she will let you know when your time is up. So we will begin with the first case. It is the United States of America versus Nelson Negron. Gennaro Coriglio is here for Negron. Michelle Vigilance is here for the United States. And Mr. Coriglio, are you ready to proceed with your argument? Yes, your honor. You may proceed. May it please the court. Counsel. The district court erred in this case when it sustained the government's objections to the three-level enhancement that U.S. probation originally recommended and instead imposed a six-level enhancement. That prejudiced Mr. Negron as his guidelines would have been 15 to 21 months instead of 24 to 30 months. Ultimately, Mr. Negron received a two-month downward departure to 22 months. The whole issue here is what was the underlying offense according to Application Note 1 and 2J1.6. And it's the defense's position and U.S. probation's position that the underlying offense was the aggravated identity theft. That was the count of that Mr. Negron pled to. And that's the offense in respect to which he failed to appear. So because he was only facing a two-year statutory max instead of a five-year statutory max, the three-level enhancement was the proper enhancement. This is Judge Wilson. I'm looking at the guidelines, and the relevant guideline defines offense as the offense of conviction, but then it says unless a different meaning is specified. That's what it says at 1B1.1 Comment 1 Note 1. And then when you look at the specific guideline that we're applying here, which provides for a meaningful offense, it says, and I'm going to quote, the offense in respect to which the defendant failed to appear. And then the comment, Note 1 says, and that definition includes pending charges. But wasn't the conspiracy charge still pending at the time Negron failed to appear for sentencing? And that would make the conspiracy charge the underlying offense, right? It's the defense's position that the conspiracy charge was not still pending because he couldn't be sentenced on that particular charge. The government moved to dismiss that charge? The government had not moved to dismiss that charge. How could it not be pending if the government had moved to dismiss it and the court hadn't dismissed it? Because the whole application Note 1 in 2J1.6 says the offense in respect to which the defendant failed to appear, and the whole logic under the guideline and the increase in severity depending on the increase in the statutory maximum is that individuals that are facing greater sentences should receive a greater punishment if they fail to appear. Here, Mr. Negron could... But that guideline provision that I just quoted to you says the offense in respect to which the defendant failed to appear includes pending charges. Right. And I'm looking at which application note, Your Honor? Look at 2J1.6, sub small b, sub 2, comment Note 1. It's still our position that at the end of the day, he could not have been sentenced on that charge when he appeared for sentencing. So the way this plea agreement was written, because there was no language in the plea agreement, were Mr. Negron to fail to appear for sentencing, that that would violate his plea agreement. He couldn't have walked in at sentencing and the court couldn't have imposed a five-year sentence. I know this factual scenario is a little unusual given the way the plea agreement was drafted, but at the end of the day, if the logic underlying the guideline is get an increased sentence for a penalty for a scenario where you're facing an increased penalty, the only penalty he was facing, which the judge actually said when he was sentenced, is he's capped at 24 months, and that's a good thing. So the fact that the U.S. Attorney's Office didn't dismiss the actual charge until after sentencing was just a formality. Because he could only get two years once the court accepted the plea and accepted the plea agreement at the change of plea. We would have to say if we accepted your argument that the conspiracy charge was not still pending at the time that he failed to appear, and I just don't know how we can do that given this provision of the guideline. Well, I think it's consistent with the guideline. It's also consistent with some of the case law that the government cited. The whole purpose is what is the defendant actually on notice about? In other words, Mr. Negrin was on notice that when he shows up for sentencing, he's going to get two years. In his mind, he was fleeing from a sentence of two years, not a sentence of five years. If the court were to apply it to this very unique scenario, given the underlying nature of the plea agreement, it would sort of go against the logic of the underlying guideline. It would be a fallacy that Mr. Negrin was fleeing from a five-year sentence, which is what the court would be holding here. There's just not, under any scenario, a way— Even though he violated his plea agreement by failing to appear? Well, that's another interesting issue in this particular case. At the end of the day, the plain language of the plea agreement says nothing about failing to appear for sentencing being a violation of the plea agreement. I understand the case law from the Fourth Circuit, U.S. v. Davis, David, where the court says that they're of the opinion that implicit in every such plea agreement is the defendant's obligation to appear for sentencing. But, A, that's not binding on the court. B, I think it goes against the whole notice and the whole logic underlying this guideline. And C, it's just this court should adopt a plain reading of the plea agreement. There's a reason why the U.S. Attorney's Office in the Southern District of Florida generally doesn't write plea agreements like this. They want to have an out in the plea agreement should the defendant fail to appear, commit a new offense before sentencing. That's not the language that they chose to use in this plea agreement. So I don't think that the court should— Mr. Griglio, this is Judge Bush. I'm sorry to interrupt. There was more here than just not showing up for the hearing. Didn't Mr. Negrin—didn't he commit another crime while he was failing to appear? Yes, he was arrested for another offense while he was failing to appear, which— No, because the U.S. Attorney's Office drafted this plea agreement. They typically put that language in their plea agreements for just this scenario. For whatever reason, in this particular plea agreement, this limited situation, this limited factual pattern, they chose not to for whatever reason. So this court should just adopt the plain reading of the contract and not read terms into the contract. Counsel, two minutes. Two minutes. This is Judge Marcus, counsel. Help me understand what happened here. Let's assume, as Judge Bush said, the defendant breached the agreement by failing to appear, and the agreement therefore could have been voided by the United States. Did the government void the brief, or did they thereafter ratify the brief and the terms by dismissing the other two counts? They ratified the plea agreement and dismissed the counts. So while they could have voided it, they chose not to void it. Is that what happened here? That's correct, but I don't believe they could have voided it, not just for the reasons I just mentioned, that it's not a breach because of the plain language. Let's assume, for the purposes of my question, let's assume it was voidable and they could have voided it on account of a material breach by your client for failing to appear. The bottom line, however, is that they chose not to do what they might have been able to do and instead doubled down and ratified the agreement by dismissing the two counts. Isn't that what happened? That's absolutely correct. And to me, the plea agreement wasn't voidable. When did the government dismiss the remaining charges after Negrin was sentenced with the enhancement, though, right? The government dismissed the charges at the sentencing. So he was sentenced on April 10th, 2018 to two years on count 12. Is that correct? That is correct. And at the same time, the government, pursuant to the plea agreement, as best I can tell, the court, when it entered the judgment that day, dismissed all remaining counts, as discussed pursuant to the government's plea agreement and promise. So the court dismisses counts 1 and 13 at the time that it imposed the two-year sentence on count 12. Correct. Is that correct? That is correct. And my time has expired. I just want you to help me understand what happened here, Mr. Coriglio. So the government did not at any point say to the court, we did agree to dismiss counts 1 and 13, but because the defendant materially breached it, we're going forward with those counts and we want you to vacate the plea agreement. They didn't do that. Rather, they went ahead with the bargain, even though he may have breached. And the court, pursuant to all of that, dismissed 1 and 13, leaving only count 12, the count to which he pled and the count to which he was sentenced to two years. Do I have that accurately? You have that accurately, and it was the judge's understanding at the time she imposed sentence when she said, good thing he's capped at two years. So I think that was the judge's understanding, too, that all he could face was two years. Thank you. All right. We'll hear from Ms. Vigilance on behalf of the government. Good morning, Your Honors. Michelle Vigilance representing the United States. May it please the court. The court should affirm the district court's decision for several reasons, but with the court's indulgence, I'd appreciate the opportunity to take a moment just to highlight the first aspect of the record that the United States believes to be dispositive in this case. I do have three main points, but the first one I'd like to highlight, if I may. The defendant has already admitted that the conspiracy count was, in fact, the underlying offense for his failure to appear. We see this by closely reviewing the indictment, the factual proffer, and his change of plea transcript. And I will explain, if I may. As the court is aware, the defendant was charged by indictment for failure to appear under 18 U.S.C. 3146A1. The indictment in that case doesn't just reflect the substantive statutory number, 3146A1. It also includes and B1A2, which is the punishment subsection applicable for this particular case. As I'm sure the court is aware, 3146B1A1 through 4 talk about the different types of punishment or levels of punishment that are applicable based upon various underlying offenses, depending on those underlying offenses, various sentences. Under 3146B1A2, as reflected on the face of the indictment, where the underlying offense exposes the defendant to five years or more imprisonment, the relevant failure to appear is punishable by up to five years and or a fine. However, where a defendant under 3146B1A3, on the other hand, where that defendant, where the underlying offense rather exposes the defendant to less than five years, the relevant failure to appear is punishable by up to two years and or a fine. When we look at docket entry one, which is the indictment in the failure to appear matter, case number 18CR20323, we see the statutory language reflecting 3146A1 and B1A1. Then in the body of the indictment, as is also reflected in the language of the failure to appear, the defendant is specifically charged with having been charged with conspiracy to commit access device fraud and aggravated identity theft, PAMA, offenses punishable by up to five years and two years imprisonment, respectively, and then failed to appear. And it goes on. Fast forward to the failure to appear, excuse me, to the change of plea hearing. At the change of plea hearing, the defendant was specifically asked by the court whether he and his counsel had reviewed and closely read and discussed the factual proffer and the indictment, which, as I've mentioned, the factual proffer actually mirrors the indictment in that it specifically references the conspiracy count, count one, which was punishable by up to five years, as well as the aggravated identity theft count, which is punishable, as the court knows, by up to five years. Ms. Vigilance, this is Judge Bush. If I wouldn't, if you wouldn't mind me interrupting for a second. So it seems to me that the argument of Negrin's argument is that the government had a plea agreement with him and it chose not to void that agreement. And, therefore, the only charge going into the sentencing that he was aware of or on notice that he was going to be punished for was the offense that would give the lower, the three-level enhancement, not the six-level enhancement. So I guess my, for me, it seems to me the question is, well, first of all, the district court had the ability not to honor the plea agreement. Is that correct? The district court had, yes, Your Honor, the district court could have articulated its desire basically to reject the plea agreement, allow the defendant the opportunity to withdraw his change of plea. Right, and that wasn't dependent upon whether the government pulled out of the agreement. I mean, the court could just do that on its own, correct? The court could have done that on its own. I do think the court might have heard from the defense on that subject, of course, as to whether or not the court's acceptance of the change of plea was, in fact, conditional or not. I do think that the court could have made that decision at that time. So going into the sentencing, Mr. Negrin was on notice that the government or that the court could refuse not to accept the plea agreement, in which case all three of the charges are still, they're still pending. They're still in front of the court, correct? Yes, Your Honor. The court is absolutely right, and I would say that the United States' position is that whether or not the court could have done that, whether or not the United States was prohibited from prosecuting him for the conspiracy count for whatever reason, because of the plea agreement or because of double jeopardy or any other reason, all of those different variables are irrelevant because at the time the defendant fails to appear, the defendant should charge with not one offense. The three. On that particular day, the defendant had an expectation that the government would move to dismiss. The government doesn't have power to dismiss the matter at that point of the plea agreement. The government has stated pursuant to the plea agreement that the government would be moving at a later date to dismiss the remaining counts. If the defendants were permitted to simply presume that the government's statement that it would do something in the future is tantamount to the dismissal at the time, that would incentivize the defendant's failure to appear at sentencing. That would only encourage defendants to plead guilty to lesser offenses, as this defendant did, the two-year max being the matter to which he entered his guilty plea, only to then turn around and walk away from the whole proceeding, even though he had been under the court's order to appear for every one of his hearings. His relationship was not only with the government, but actually, more importantly, with the court. When he appeared for his very first hearing, he had his initial, his arraignment, he is given a bond hearing and he's released with terms and conditions that he had to comply with in order to remain out on bond at liberty in the community. One of those conditions was that he not only keep his hands off people's personal identifiable information, but also that he appear at every one of the hearings relating to his case. The belief that he somehow was responsible to appear only until his change of plea, but not thereafter, is not something that the government can agree with and is something the government is respectfully asking the courts also to disagree with. Let me ask you a question. Why did the government double down on the plea agreement and not actually move to void it? You could have done that, it seems to me. Speaking for myself, I think he, what he did would have voided the agreement. But the oddity about the case is it didn't matter to the United States. Even though he breached the agreement, as I see it in a material way, the United States said, that's all right, let's go forward with the plea agreement. It is absolutely of no moment here. You're absolutely right, Your Honor. The government, and I don't disagree with the court's decision. Well, that was a question for me rather than a statement. That's really where I've hung up. This is Judge Wilson. Is it because the district judge could have rejected the plea agreement at all times, at any time? Yes, sir. The district court could have rejected it. The government could have rejected it. But again, as I've mentioned, the fact that the government ultimately went ahead and extended the benefit to the defendant of the plea agreement anyway, doesn't mean that he didn't fail to appear. He still was responsible for the consequences of his failure to appear, which occurred at the time that he had three counts pending against him, which is why the failure to appear indictment and language is so relevant, and which is why his plea colloquy during his failure to appear hearing is also highly relevant. Because in that hearing, the court specifically asked him whether or not he was aware that his failure to appear's maximum punishment was five years. The only way that his maximum... limit his terms to what is written. What's your response to that? My response to that is quite simply that the plea agreement would not have made any sense had the parties' reasonable understanding and agreement not been that the defendant appear for his own sentencing. The requirement that the defendant appear for his sentencing is implicit, frankly, in the plea agreement. The language refers to the sentencing at a number of different points within the plea agreement at docket entry 81. The language talks about the fact that the defendant has to pay a special assessment, which had to be paid on the date of his sentencing. It was not due to the court prior to that date. The United States would also respectfully point out that to consider the plea agreement and a lack of language requiring the defendant's appearance within the plea agreement in a vacuum, ignoring the bond conditions, which I've already mentioned, and ignoring the Federal Rule of Criminal Procedure 32, which specifically contemplates and discusses the fact that the defendant and the defense attorney, if he's represented, and the government all have to be present at the sentencing. Under 32I, the district court is specifically required to address the defendant personally in order to allow him to speak or present any information to mitigate the sentencing. Obviously, that could not take place without the defendant physically being in court. Obviously, the defendant is not in a position to know what the Federal Rules of Criminal Procedure are. But within the context of his appearing before the court for a bond hearing in October of 2017... Let me ask you, I'm sorry, this is Judge Marcus, if you could help me with this. At the time he entered the plea to the bond-jumping charge on August 15, 2018... Yes, Your Honor. And then he was sentenced on October 17, 2018, to the bond-jumping. But at the time he entered the plea, on August 15, 2018, had the judge already dismissed the other counsel? Yes, Your Honor. August counsel... Two minutes. Two minutes, counsel.  Yes, Your Honor. The dismissal of the outstanding counsel in the other case had happened on April 10, 2018, at that sentencing for the aggravated identity theft. And the court is absolutely right, it is after that date, on August 15, 2018, that the defendant... ...with prejudice by the United States District Court, without any objection by the United States. Right? On the United States motion, in fact. Yes, sir. Let me ask just one other question, if you can help me. I'm looking at Application Note 1 of 2J1.6, and it defines, quote, underlying offenses. Is that the right thing that I should be looking at? 2J1.6, Application Note 1? Yes, Your Honor. That's the right Application Note. Okay, let's go to the language itself. It defines underlying offense as, quote, the offense in respect to which the defendant failed to appear. What's interesting about the language is, offense is denoted in the singular, not the plural. Wasn't the only offense in respect to which the defendant failed to appear the offense to which he had pled guilty, rather than the other two counts which the government moved to dismiss and the court dismissed? No, Your Honor, not at all. And I understand the court's question. In this particular case... I'm just looking at the text. I just want you to help me with the text itself of the application. This is a peculiar case insofar as how it comes up, and I don't think there's anything in any of the cases that are quite like this. If I may, Your Honor, the court has already alluded to a different part of the language in the sentencing guidelines. Yeah, but you can answer my question, counsel. May I, Judge? Thank you so much, Your Honor. Please, please. I'm specifically referring to sentencing guidelines section 1B1.1, where offense is defined as offense of conviction and all relevant conduct under 1B1.3, unless a different meaning is specified or is otherwise clear from the context. Now, in this particular case, I do understand that at first blush, we could look at the underlying offense, and we might get the impression that because he's entered a guilty plea to one particular count, that that is the count to which the words underlying offense refer. But in this particular case and in cases where individuals have entered a guilty plea to what would be a lesser offense, to allow a defendant to then simply fail to appear, to abscond and fail to appear, thereby ignoring the fact that there are indeed outstanding offenses which are more aggravated, which carry greater sentences and expose him to a lengthier prison term, would, within the context of the policy behind the entire sentencing guidelines, would result in untenable results in not only this case but many, many others. Let me, if I can interrupt you. This is Judge Wilson. If you go in that application note, if you keep going, does the definition of the offense in which the defendant failed to appear, and this seems like this is your best argument, it includes, and I don't have it in front of me, but I think it says it includes pending charges, right? Your Honor, I did hear the court mention that. The court is referring to a commentary note that says underlying offenses include pending charges. Doesn't the definition include pending charges? Your Honor, no, sir. It actually, the entire sentence says underlying offense means the offense in respect to which the defendant failed to appear. Okay. So the right, just so that I'm clear on this, you agree with the defendant that the appropriate guideline we have, guideline note we have to apply and construe is 2J1.6 Application Note 1. Underlying offense is defined as, quote, the offense in respect to which the defendant failed to appear. That's the question, right? What offense did he fail to appear on? And I'm simply asking if he has already been sentenced on count 12 and the government had agreed to dismiss 1 and 13, although they had not yet been dismissed but later were dismissed, wasn't the offense in respect to which the defendant failed to appear count 12? Okay. Just to be clear, Your Honor, he had not been sentenced to count 12 at the time that the remaining counts were dismissed. No question about that. Okay. I just wasn't sure. No, I agree. There is no question that those counts weren't dismissed until he was sentenced on count 12. And I agree with you that you would look at what happened at the time he jumped on and try to apply that to the definition. But the definition is singular, not plural, and it talks to the offense in respect to which he failed to appear. He was supposed to appear for a sentence on the count to which he pled, which was count 12. He failed to appear for that, right? Yes, Your Honor. However, there is one count that carries the most sentence, the highest sentence. That count is the conspiracy count. The underlying offense, while the failure to appear indictment and the facts of the public do refer in this case to more than one count, the government, I'm simply arguing that the only count that should have been commensurate and that was commensurate to the failure to appear as far as the punishment was concerned is the conspiracy count. And that is clearly reflected in the indictment to which the defendant knowingly entered his guilty plea. Although the irony, as I said, is at that point by the time the plea was entered and the allocution occurred to the bond-jumping count, counts 1 and 13 had already been dismissed on the government's motion. Right. But they had not been dismissed at the time that he failed to appear. Correct. Right. I got it. Thank you so much. Thank you so much. All right. Mr. Carriglia, I believe you've reserved some time for rebuttal. Thank you. The fact that he was indicted under 1831-46 doesn't drive the court's determination because the language is different if the court looks at 18 U.S.C. 31-46-1A. And compare that to the indictment. There's a couple of different ways to violate that. It's if the person was released in connection with the charge, which is how they charged it here. And it's true that Mr. Negrin was released on bond in connection with all three charges. An alternative way to violate 1A would have been to charge him with while awaiting sentence. So the language in 31-46 is different than underlying offense. And as I went back and I was double-checking while I was listening to the argument, but underlying offense doesn't say anything about pending charges. And probation in Dock and Entry 29.2, page 1, notes another guideline, 1B1.2A. In calculating the application of the guidelines, determine the offense guidelines section in Chapter 2 applicable to the offense of conviction. So probation equates the offense of conviction to the underlying offense, and that's why probation agrees with the defense position. The other thing I'd like to say is on my reply brief on page 8, I cited the wrong plea colloquy. I cited the plea colloquy from the bail jumping case, not the plea colloquy from the Ag-I-D theft case. In the Ag-I-D theft case, the judge specifically said in Dock and Entry 216, page 11, the plea is therefore accepted and he is now a judge guilty of the offense. Jeopardy attached at that point. So I definitely disagree that this plea was voidable. It was not because jeopardy attached at the time. The judge never deferred. This wasn't a conditional acceptance of a guilty plea or a conditional acceptance of a plea agreement. But don't you see, Mr. Coniglio, it hardly matters whether it was voidable or not because it was not voided. It was doubled down and ratified. I agree with that as well. But I think that it couldn't have been regardless, whereas where I differ with the court. But I agree with Your Honor. At the end of the day, and it all goes back to the underlying logic and notice, Mr. Negrin was on notice that he was going to get two years, and that's why his penalty for bail jumping should be commensurate with it. And there were penalties for committing new offenses, a new indictment. It's not like he was able to commit this new offense and not have any consequences. And on top of it all, the government could have remedied this situation by properly drafting the plea agreement to include those concerns. It shouldn't now, after the fact, be asking the court to read language into the plea agreement. Time has expired. Thank you very much, Your Honor. Thank you, Mr. Coniglio and Ms. Vigilance.